IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BERNARD GARCIA-KEEGAN, | ) | CASE NO. 3:16 CV 2828 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Bernard Garcia-Keegan for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders the parties

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated November 21, 2016.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

[6] ECF # 12.

have briefed their positions.[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## A. Background facts and decision of the Administrative Law Judge ("ALJ")

Garcia-Keegan who was 46 years old at the time of the administrative hearing,[11] has a master degree in public administration.[12] His past employment history includes work as a chief financial officer (president) , director of operations and administration for a museum, courtroom clerk.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Garcia-Keegan had severe impairments consisting of cervical and thoracic degenerative disc disease with radiculopathy; obesity; diabetes mellitus, type two; bilateral carpal tunnel syndrome; sleep apnea; insomnia; and periodic limb movement syndrome (20 CFR 404.1520(c)).[14]

---

[7] ECF # 14 (Garcia-Keegan's brief), ECF #16 (Commissioner's brief), ECF #17 (Garcia-Keegan's reply brief).

[8] ECF # 16-1 (Commissioner's charts); ECF # 15 at 6 (Garcia-Keegan's charts).

[9] ECF # 15 at 2.

[10] ECF # 19.

[11] ECF # 15 at 2.

[12] *Id*.

[13] *Id*.

[14] ECF # 11, Transcript ("Tr.") at 22.

The ALJ made the following finding regarding Garcia-Keegan's residual functional capacity:

> After consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is capable of light work. He must sit for five minutes after every hour of standing or walking. Also, he can frequently handle, finger and use hand controls with the bilateral upper extremities. Moreover, he can occasionally reach overhead with both upper extremities. The claimant can frequently kneel, crouch, balance on uneven surfaces and climb ramps and stairs. He can never crawl or climb ladders, ropes and scaffolds. Also, he can work in an environment with only occasional vibration but never an environment with extreme cold or concentrated dust, fumes, odors, or other pulmonary irritants.[15]

Given that residual functional capacity, the ALJ found Garcia-Keegan capable of his past relevant work as president and museum director[16] and, therefore, not under a disability.[17]

**B. Issues on judicial review**

Garcia-Keegan asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Garcia-Keegan presents the following issue for judicial review:

- Whether the ALJ gave "good reasons" for rejecting the March 2015 opinions of treating physician Dr. Cooper that Mr. Garcia-Keegan could rarely hold his head in a static position; occasionally look down; occasionally turn his head right and left; occasionally look up.[18]

---

[15] *Id.* at 25.

[16] *Id.* at 33.

[17] *Id.* at 35.

[18] ECF # 14 at 1.

The Court recommends that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A. Standards of review

#### *1. Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives “a directed verdict” and wins.[20] The court may not disturb the Commissioner’s findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### *2. The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are “well-supported by medically acceptable clinical and laboratory diagnostic techniques” and “not inconsistent with the other substantial evidence in [the] case record,” then they must receive “controlling” weight.[23]

---

[20] *LeMaster v. Sec’y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm’r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers*, 486 F.3d at 241.

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.
- Identify evidence supporting such finding.
- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

[36] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]
- the rejection or discounting of the weight of a treating source without assigning weight,[60]
- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

[61] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefore,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B. Application of standard**

This case presents the single issue on judicial review of whether the ALJ erred by giving only little weight to the functional opinion of Garcia-Keegan's treating primary care physician concerning work-related limitations in his neck.

As the ALJ noted, Garcia-Keegan had undergone anterior cervical decompression and fusion surgery in April 2012, and followed that procedure with additional surgery at that site in October 2012.[70] The record indicates that Dr. Marsha Cooper, M.D., began treating Garcia-Keegan in March 2015, and conducted additional examinations in April 2015, before providing a functional limitations opinion on May 11, 2015.[71]

The ALJ summarized Dr. Cooper's opinion as to functional limitations as follows:

> With respect to the opinion evidence, Marsha Cooper, M.D., submitted a medical source statement to the Social Security Administration on behalf of the claimant (Exhibit 20F/2-5). Dr. Cooper provided the claimant's pain and other symptoms would interfere frequently with his attention and concentration to perform even simple work tasks (Exhibit 20F/3). The doctor also stated the claimant could sit for eight hours, stand for six hours and walk for six hours in an eight-hour day although he could only stand for three hours and stand one hour at one time with the claimant needing to walk every three hours for 10 minutes (Exhibit 20F/3). Dr. Cooper further stated the claimant would need

[69] *Id.* at 940.

[70] Tr. at 27.

[71] *Id*. at 1461-63.

> to unscheduled breaks every two hours for 15 minutes before returning to work (Exhibit 20F/4).
>
> Continuing, Dr. Cooper stated the claimant could rarely lift up to 10 pounds and never more than 10 pounds as well as he could rarely hold his head in a static position and only occasionally look down, turn his head from side to side and look up (Exhibit 20F/4). Dr. Cooper also provided the claimant could rarely twist, stoop, crouch or squat, never climb ladders and occasionally climb stairs (Exhibit 20F/4). Further, the doctor stated the claimant would miss more than four days per month but he had no significant limitations with reaching, handling or fingering (Exhibit 20F/5).[72]

The ALJ then assigned only little weight to this opinion, giving the following reasons for that weight assessment:

> Little weight is accorded to the opinion of Dr. Cooper because the objective evidence and other substantial evidence of record do not support the opinion. A review of the claimant's treating physician records reflects the claimant's symptom improved after he underwent his two cervical surgeries. Orthopedic examinations noted that although the claimant had decreased range of motion in the cervical spine and reduced sensation in the left arm, his symptoms had improved with surgery while his motor strength was intact (Exhibits 3F/327, 343-345, 4F/28 and 1lF/2, 8- 17). Other treating physicians also typically indicated the claimant's gait was steady, he had normal strength and tone, normal movement in all extremities and his coordination and cerebellum function was intact upon examination after the second surgery (Exhibits 14F/4-11, 16F/12, 19F/2-3, 8 and 21F/6-7, 15).
>
> Such examination findings, while supporting Dr. Cooper's opinion the claimant can sit for eight hours, stand for six hours and walk for six hours in an eight-hour day consistent with the finding of light exertional work, do not support the degree of limitations contemplated in the rest of her opinion. Moreover, the diagnostic evidence does not support the degree of limitations alleged by Dr. Cooper with regard to the claimant's other abilities. An EMG revealed only mild radiculopathy in May 2014 (Exhibit 18F/34-35). Radiologic images also showed no significant stenosis in the lumbar or cervical spines after the second surgery (Exhibits 13F/3-7 and 17F/87- 89). As

---

[72] *Id*. at 29-30.

> a result, the evidence of record does not support the overall opinion of Dr. Cooper and it is accorded little weight.[73]

Garcia-Keegan argues that the ALJ's error consists in "erroneously rejecting treating physician Dr. Cooper's opinions that Mr. Garcia-Keegan could rarely hold his head in a static position; occasionally look down; occasionally turn his head right and left; and occasionally look up.[74] Garcia-Keegan notes that not only did the ALJ omit any restriction on neck or head positions from the RFC, but the ALJ also did not specifically mention these functional limitations in his discussion of Dr. Cooper's opinion.[75]

The Commissioner, in response, claims that the ALJ "specifically cited that portion of Dr. Cooper's opinion" that addressed the head and neck, but did not include the limitations put forth by Dr. Cooper because "the objective evidence, including clinical notes from orthopedic examinations and radiologic images, do not support that degree of limitation in [Garcia-Keegan's] cervical spine."[76] The Commissioner further asserts that the ALJ's weight assignment was consistent with the fact that no other medical source had opined that Garcia-Keegan was as limited in head and neck mobility.[77]

---

[73] *Id*. at 30.

[74] ECF # 14 at 6-7 (citing record).

[75] *Id*. at 7 (citing record).

[76] ECF # 16 at 12 (citing record).

[77] *Id*.

In reviewing the ALJ's reasons for the weight assigned to Dr. Cooper's functional opinion, it is clear that the analysis is extensive, but also clear that it does not directly address the limitation that he cannot hold his head in a static position. Moreover, an observation that the ALJ generally considered the "portion" of Dr. Cooper's opinion dealing with functional limitations is not the same as a specific discussion of a particular limitation.

To that point, a review of the ALJ's decision, quoted earlier, leaves no doubt that this particular limitation was not specifically analyzed. In addition, it is difficult to conclude that the ALJ's initial summary of the objective medical evidence as it concerns the full range of motion in the cervical spine suffices as a good reason to give little weight to this highly particular limitation.[78]

That said, the ALJ does then also cite to a May 2014 EMG that showed only "mild radiculopathy," and further mentioned that radiologic images after the second surgery "showed no significant stenosis in the lumbar and cervical spine...."[79] It is not "playing doctor" for the ALJ to note, as was done here, that the uncontroverted objective medical evidence showed only a mild irritation or damage to the nerve root that would effect the neck and head, and that there was no significant objective medical evidence that the spine was compromised by stenosis. Garcia-Keegan has not pointed to any specific contrary medical evidence that would support Dr. Cooper's opinion in this regard and has conceded that no other medical source has construed the medical evidence in the same manner as Dr. Cooper.

---

[78] See, tr. at 30 (citing record).

[79] *Id*.

Thus, although the ALJ here might have been more specific in assembling and connecting the evidence to the reasons why particular limitations were not accepted as part of the RFC, and therefore why the functional opinion of Dr. Cooper was given the weight it was assigned, the ALJ's reasoning, on its face, is grounded in the applicable regulations and case law, has a foundation in the evidence of record and is capable of meaningful judicial review. Specifically, and as is more fully set forth above, the reason for giving lesser weight to Dr. Cooper's functional opinion as to Garcia-Keegan's neck and head was a good reason, supported by substantial evidence and set out in the opinion so that it was capable of meaningful judicial review.

## Conclusion

For the reasons stated, I recommend finding that the decision of the Commissioner to deny benefits to Bernard Garcia-Keegan is supported by substantial evidence, and that this decision should here be affirmed.

Dated: December 7, 2017

s/ William H. Baughman, Jr.
United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[80]

---

[80] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).